THOMAS A. CURRAN *v.* JOSEPH CHEESEMAN ET AL.

Section 30 of the act of Congress of 1852 does not expressly or impliedly relieve the proprietors of steamboats from the presumption of negligence, which, under section 13 of the act of 1838, arises from the simple fact of explosion.

The averment of a strict compliance, on the part of the proprietors of steamboats, with all the requirements of the act of 1852, without averring care and denying negligence, is not a good defense to the allegation of loss by an explosion caused by negligence.

Reserved from Special Term.

· This case came to the General Term, on motions to strike out the second and third defenses, and on a demurrer to the fourth defense.

The suit was brought by a passenger on the steamboat Magnolia, on a trip from Cincinnati to Maysville, against the owners for damage suffered by him from an explosion of the boilers, caused, as is alleged, by negligence of the defendants and their servants.

The answer, as a first defense, denies negligence or want of skill in the navigation of the boat, and denies that the

boilers exploded through any carelessness or unskillful-ness of themselves or their servants, or through any un-seaworthiness of the boat, and denies the damage alleged.

The second defense says that the defendants were carry-ing on commerce between the States bordering on the Ohio river, under the laws of the United States relating to the coasting trade, and under the laws relating to the better security of the lives of passengers on board vessels propelled by steam, and used the special license granted by virtue of said laws; that the boat was licensed, equipped, and manned according to the laws of the United States; that less than six months prior to the loss, the steamboat had been inspected under the act of Congress of 1852, for the better security of vessels propelled in whole or in part by steam, and a certificate given by the inspectors that she was in conformity with law, and that she might be em-ployed as a passenger steamer without peril of life from any imperfection, and that her boilers had been tested and found safe and conformable to the requirements of the law; that no want of care or skill led to or caused the injury, but that the injury happened from causes over which they had no control; that a principal cause was the thickness of the iron of the boilers, which were made to conform to the law; that the injury did not happen from want of care or from any cause which could have been known.

The third defense alleges all the facts contained in the second, except that it is not expressly averred that the cause could not have been known by any skill, care, or foresight.

The fourth defense seems to be identical with the second and third, except the omission to aver expressly that the engineer in charge used due care in the management of the boilers and engine at the time of the disaster.

*Burnett, Follett & Wright,* for plaintiff.

*Lincoln, Smith & Warnock,* and *Hoadly, Jackson & Johnson,* for defendants.

TAFT, J.   The argument in this case has gone upon the idea that the fourth defense did not allege care, and deny negligence as the cause of the injury, but relied upon the averment that it was caused by the thickness of the iron, and the fact that all the requirements of the act of Congress had been complied with, and that it differed from the preceding defenses in not alleging care and denying negligence.

If we have been able to comprehend these defenses accurately, there is some doubt whether the supposed difference exists in fact.   But as both parties assume that it is so, we shall so consider it in this opinion.

The claim is that the legislature has provided very minutely the precautions it has deemed necessary, and that it has left no room for want of care, if the law is complied with.   By section 30 of the act of 1852, which is amendatory to the act of 1838, it is provided:

"That whenever damage should be sustained by any passenger or baggage, from explosion, fire, collision, or other cause, the master and the owner of such vessel, or either of them, and the vessel, should be liable to each and every person so injured to the full amount of damage, if it happened through any neglect to comply with the provisions of law herein prescribed, or through known defects or imperfections of the steaming apparatus, or of the hull."

Section 13 of the act of 1838, 5th U. S. Statutes at Large, page 306, of which the act of 1852 is an amendment, is as follows, viz:

"That in all suits and actions against proprietors of steamboats for injuries arising to person or property by the bursting of the boiler of any steamboat, or the collapse of a flue, or other injurious escape of steam, the fact of such bursting, collapse, or injurious escape of steam, shall be taken as *prima facie* evidence, sufficient to charge the defendant or those in his employment with negligence,

Curran *v.* Cheeseman et al.

until he shall show that no negligence has been committed by him or those in his employment."

This section has not been repealed, unless it is to be considered as impliedly repealed by section 30 of the act of 1852. That such is not the true interpretation is manifest from the language of the Supreme Court of the United States in the case of the *New World* v. *King*, 16 H. 469: " That the proper management of the boilers and machinery of a steamboat requires skill must be admitted. Indeed, by the act of Congress of August 30, 1852, great and unusual precautions are taken to exclude from this employment all persons who do not possess it. That an omission to exercise this skill vigilantly and faithfully endangers, to a frightful extent, the lives and limbs of great numbers of human beings, the awful destruction of life in our country by explosions of steam boilers but too plainly proves. We do not hesitate, therefore, to declare that negligence in the care or management of such boilers, for which skill is necessary, the probable consequence of which negligence is injury and loss of the most disastrous kind, is to be deemed culpable negligence, rendering the owners and the boat liable for damages, even in case of gratuitous carriage of a passenger. Indeed, as to explosion of boilers and flues, or other dangerous escape of steam on board steamboats, Congress has, in clear tones, excluded all such cases from the operation of a rule requiring gross negligence to be proved to lay the foundation of an action for damages to person or property."

He then refers to section 13 of the act of 1838, and proceeds: " This case falls within this section, and it is therefore incumbent on the claimant to prove that no negligence has been committed by those in their employment." Also, *Waring* v. *Clarke*, 5 H. 465, and *Murphy's Adm'r* v. *Northern Trans. Co.*, 15 O. S. 553.

We are clearly of opinion that the provisions of specific things to be done and provided by the owners of steamboats by the statute, does not imply any discharge of them

from responsibility for care in the navigation and management of the vessel.

It has been held by our Supreme Court, and is established law, that if a carrier enter into an express contract by which the carrier is relieved of responsibility for the negligence of himself or his agents, such a contract is void as against public policy. Yet we are asked by the construction of this act to discharge or limit the owners and their agents from responsibility for carelessness, without a contract even, and without any express statute. It would be a remarkable statutory provision, which should leave it possible for the owners legally to escape responsibility for negligence in the management of steam power in the carrying of passengers by water. The danger is too great, and too well recognized by legislatures as well as people, to suppose that any such relaxation was intended, unless it should be most clearly expressed. The demurrer, therefore, to the fourth defense is sustained.

Upon examination of the second and third defenses, which we are asked to strike out, we have become satisfied that the theory of all these defenses is to present one, or at most, two defenses.

The first defense would seem to cover all the kinds of negligence, on account of which a recovery is sought. The fourth defense seems to be intended to set up a compliance with the statute as an excuse for any possible want of care which may have contributed to the loss.

Both the second and third defenses seem, as we understand them, to combine these two ideas with great particularity of statement; and they are so nearly identical that we think that the record ought not to be incumbered with more than one of them. The general purpose of the code is to have the same cause of action or the same ground of defense but once stated. But in the present case, in order to facilitate the review of the case in the United States Supreme Court, we have concluded to permit one of these two defenses to remain on the record.

The defendant can elect which it shall be. As to the other, the motion to strike out will be granted.

The effect of this ruling is to leave the first general denial of negligence .to stand, and with it a plea or defense combining an averment of a specific compliance with the act, with a denial of want of care, and also a third defense relying upon compliance with the statute without the allegation of care. This, we think, will give opportunity for the defendants to introduce all the evidence which they can be entitled to introduce in any aspect of the defenses disclosed by the answer as drawn.